# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SCOTT PETERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17−cv–499−SMY |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| DAVID SHULKIN, | ) | |
| ROBERT A. MCDONALD, | ) | |
| LYNETTE T. TAYLOR, | ) | |
| DEPT. OF VETERANS AFFAIRS, | ) | |
| BRUCE RAUNER, and | ) | |
| JOHN BALDWIN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is now before the Court on Plaintiff Scott Peters' "Objection and Motion for Reconsideration" (Doc. 12) and "Motion for Relief from Judgement or Order" (Doc. 15). In the motions, Plaintiff objects to this Court's dismissal of Counts 1, 3, and 5 in its Order Referring Case (Doc. 9) ("Threshold Order"). For the reasons discussed herein, the Motion is **DENIED** in part and **GRANTED** in part.

The Federal Rules of Civil Procedure do not explicitly recognize motions to reconsider. However, the Seventh Circuit has held that a motion challenging the merits of a district court order will automatically be considered as having been filed pursuant to either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See, e.g., Mares v. Busby*, 34 F.3d 533, 535

(7th Cir. 1994); *U.S. v. Deutsch*, 981 F.2d 299, 300 (7th Cir. 1992).  Different standards and time-tables govern these motions.

Rule 59(e) applies to the reconsideration of matters encompassed in a decision on the merits.  *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174-76 (1989).  Under this rule, motions are generally granted only upon a showing of either newly discovered evidence not previously available or evidence in the record that clearly establishes a manifest error of law or fact. *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511-12 (7th Cir. 2007) (*Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1121 n. 3 (7th Cir. 2001)).  "'[M]anifest error' . . . is the wholesale disregard, misapplication, or failure to recognize controlling precedent."  *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citations omitted).  A Rule 59(e) motion must be filed within 28 days of the judgment or order being challenged.  FED. R. CIV. P. 59(e).

Rule 60(b) permits a court to relieve a party from an order or judgment based on such grounds as mistake, inadvertence, surprise or excusable neglect by the movant; fraud or misconduct by the opposing party; a judgment that is void or has been discharged; or newly discovered evidence that could not have been discovered within the deadline for filing a Rule 59 motion.  FED. R. CIV. P. 60(b).  However, this rule is considered "an extraordinary remedy and is granted only in exceptional circumstances."  *Eskridge v. Cook Cnty.*, 577 F.3d 806, 809 (7th Cir. 2009) (quoting *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000)).  *See also In re Taylor*, 793 F.3d 814 (7th Cir. 2015).  The reasons offered by a movant for setting aside a judgment under Rule 60(b) must be something that could not have been employed to obtain a reversal by direct appeal.  *See, e.g., Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000).  Motions filed under this rule need only be filed within a "reasonable time" of the judgment or order at issue.  *See* FED. R. CIV. P. 60(c)(1).

Plaintiff's Motion is considered timely under both rules. However, Plaintiff is not entitled to the majority of the relief he seeks. Plaintiff's Complaint was quite vague and difficult to follow. From the allegations, this Court identified and analyzed 5 counts in its Threshold Order (Doc. 9). Count 1 involved Plaintiff's claims that the defendants were at fault for the situation that led to Plaintiff's arrest and incarceration. (Doc. 9, p. 5). Count 1 was dismissed without prejudice as barred under the doctrine outlined in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Plaintiff argues that his claims in Count 1 were meant to be construed as excessive force claims, under the Fourth Amendment and other legal theories, and were therefore improperly dismissed under *Heck*. (Doc. 12, p. 1); (Doc. 15, p. 1). Count 2, involving claims under the Americans with Disabilities Act and Rehabilitation Act, were permitted to proceed past the threshold stage. (Doc. 9, pp. 5, 12). Count 3, for deliberate indifference to Plaintiff's medical needs, was dismissed without prejudice for failure to plead sufficient facts to implicate any of the defendants as responsible for his lack of care. (Doc. 9, pp. 8-9). Plaintiff claims that Defendant John Baldwin should be considered liable under this claim and that neither he nor Count 3 should have been dismissed from the action. (Doc. 12, p. 3). Count 4 involved the conditions of Plaintiff's confinement. (Doc. 9, p. 9). It was dismissed without prejudice and Plaintiff does not challenge the dismissal. *Id.*; (Doc. 12, p. 3). Finally, Count 5, a Federal Tort Claims Act claim based on alleged actions by the Department of Veterans Affairs and employees thereof, was dismissed with prejudice for lack of jurisdiction over claims related to the denial of benefits by the Department of Veterans Affairs and failure to provide a "final denial of claim" letter indicating that agency review had been completed. (Doc. 9, pp. 5-6, 10-11). Plaintiff argues that this Court has jurisdiction over Count 5. (Doc. 12, p. 3).

## **Count 1**

With respect to Count 1, Plaintiff asserts that he was not "mounting a collateral attack on his criminal conviction" and that his claims related to his arrest and conviction in Count 1 were therefore wrongfully dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (Doc. 12). He further asserts that he "does not believe he violated any statute or committed any crime" and that, in the relevant altercation, "he was merely protecting himself, family, property, and dwelling from fear for his life." (Doc. 12, p. 1). Plaintiff also claims that he is specifically "attacking the behavior taught and executed by personnel who ultimately are employees of the United States of America." *Id.* In sum, Plaintiff contends that Count 1 should focus on the allegation that Sheriff's Deputy Ken Neilson and a McHenry County Sheriff used excessive force that stemmed "from training and psychology provided by defendants to both agent and Plaintiff." (Doc. 12, pp. 1-2).

It is true that "a plaintiff who has been convicted of resisting arrest or assaulting a police officer during the course of an arrest is not *per se Heck*-barred from maintaining a § 1983 action for excessive force stemming from the same confrontation." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2011). However, "a plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction: 'It is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit.'" *Id.* at 621-22 (citing *Okoro v. Callaghan,* 324 F.3d 488, 490 (7th Cir. 2003)).

In its Threshold Order, this Court noted that Plaintiff's allegations relevant to Count 1 specifically raised "the question as to whether he, or some of the defendants, should be

considered at fault for his crime." (Doc. 9, p. 6). While the Court did not articulate all of the complaint allegations that it found to be inconsistent with the validity of Plaintiff's conviction in its Threshold Order, for clarity, it will name a few of them here.

Plaintiff's Complaint includes the following allegations: "a combination of events caused mistakes by law enforcement and had it been handled correctly the entire situation averted;" "no one knew the police were present except the police and the local person who again thought the worse and changed an accident into a tragedy;" "[Plaintiff] was obscured from knowing who was assaulting [his] home/property. Because these people were using military tactical assault protocol a military tactic on a civilian home, had the government/state not employed expert military combat soldiers and allowed them to go unchecked in using them on civilian homes and property this situation most likely have been averted. As in the other example through proper training and could have been altogether and avoided;" "when the situation degenerated exponentially and abruptly, attempts were made to conceal and cover up the entire problem and policy breach;" "this situation materialized and was brought to fruition due to the fact although there is no credible evidence either party could have known what was about the take place, but the military style assault unleashed at the residence was the catalyst and point of initiation;" "I should not be here for my right to protect myself, home, property;" and the Complaint "merely addressed the numerous counterproductive actions and statements causing increased intensity levels advancing the dangerous of a situation which for all purposeful reasons did not have to take place or even transpire. . . . The entire compilation of issues did not have to happen and would have been averted had the agents that were supposed to be involved in the people, conditions, and issues of these types of situations had been according to normal procedures and protocol. They were not." (Doc. 1, pp. 10-12).

Many of these allegations, while often unclear and vague, point to law enforcement officials and the government as being at fault and the ultimate cause of the events that precipitated Plaintiff's convictions. As Plaintiff states in his Complaint (Doc. 1) and again in his motion for reconsideration (Doc. 12), he "believes he was merely protecting himself, family, property, and dwelling" when he responded to the actions of the police officers discussed in his Complaint. (Doc. 12, p. 1). At the very least, these allegations *imply* that his conviction is invalid.

Plaintiff also claims that he did not know the police were present during the relevant altercation. This claim contradicts Plaintiff's convictions for Aggravated Battery/Discharge of a Firearm causing injury to a person he knows to be a peace officer performing his or her official duties, under 720 ILL. COMP. STAT. 5/12-3.05(e)(2).[1] Plaintiff's complaint allegations that he did not know the police were present, taken as true, are necessarily inconsistent with the validity of these convictions because they required knowledge that the victims of the crime were police officers. *See Tolliver v. City of Chicago*, 820 F.3d 237, 243 (7th Cir. 2016) ("Without any acknowledgement of the mental state necessary for a conviction of aggravated battery, [the plaintiff's] version of the shooting thus implies the invalidity of his conviction.").

Plaintiff's complaint allegations also suggest that his actions constitute self-defense to the excessive force used by the relevant officers. These self-defense allegations also imply that his conviction is invalid because, under Illinois law, an individual has the right of self-defense when an officer is using excessive force. *See* 720 ILL. COMP. STAT. 5/7–1 and *People v. Williams*, 267 Ill. App. 3d 82, 203 Ill. Dec. 831, 640 N.E.2d 981, 985–86 (1994).

---

[1] *See People v. Peters*, No. 14CF000939 (Ill. Cir. Ct. June 25, 2015). Court documents and other public records are, of course, public records of which the Court can take judicial notice. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir.1994).

For the foregoing reasons, the Court remains persuaded that Plaintiff's complaint allegations relevant to Count 1 necessarily imply the invalidity of his conviction. As such, *Heck* bars Plaintiff from proceeding on Count 1 as pled. *See Tolliver*, 820 F.3d at 244.

That said, Count 1 was dismissed without prejudice. If Plaintiff indeed intends to focus his claims and to limit his allegations to those that would not imply the invalidity of his conviction, he may attempt to revive Count 1 by filing an amended complaint that alters his allegations accordingly. However, an amended complaint that includes Count 1 will face an uphill battle, as venue may be inappropriate in this district for that count – the events that gave rise to the excessive force claim asserted in Count 1 appear to have occurred in the northern district of Illinois. *See People v. Peters*, No. 14CF000939 (Ill. Cir. Ct. June 25, 2015) (indictment issued in McHenry County, Illinois). Additionally, Plaintiff's excessive force claims in Count 1 may run afoul of the statute of limitations. The alleged excessive force occurred in 2014 and Plaintiff filed the instant suit on May 11, 2017. *Id.*; (Doc. 1); *Farley v. Koepp*, 788 F.3d 681, 684 n.2 (7th Cir. 2015) ("The statute of limitations for claims brought under 42 U.S.C. § 1983 is the limitations period for analogous personal-injury claims in the forum state, *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011)—here, two years, 735 Ill. Comp. Stat. 5/13–202.").

In sum, even if this Court construed Plaintiff's claims differently from what Plaintiff may have intended, no manifest error of law or fact occurred – any construction would have resulted in the dismissal of Count 1. Plaintiff's motions to reconsider (Docs. 12, 15) will therefore be denied as to Count 1.

## Count 3

Plaintiff appears to take specific issue with the fact that Defendant Baldwin, in his individual capacity, was dismissed from the action. Because this dismissal was without

prejudice, however, Plaintiff is not precluded from re-pleading Count 3 as against Baldwin in an amended complaint. To the extent Plaintiff seeks this Court to reverse its dismissal of Count 3 without prejudice or its dismissal without prejudice of Baldwin in his individual capacity, the Court is satisfied that its decision to do so was legally sound. Therefore, Count 3 and Baldwin will remain dismissed without prejudice per this Court's Threshold Order (Doc. 9).[2] To the extent Plaintiff's motion to reconsider expands the scope of the claims raised in the Complaint (for example where he attempts to further explain Baldwin's knowledge of the deliberate indifference Plaintiff allegedly endured), he must file an amended complaint if he wishes to have these new allegations considered.

Plaintiff has identified no manifest error of law, has presented no new evidence that was not previously available and has proffered no other grounds upon which his motions to reconsider should be granted as to Count 3. Accordingly, the motions shall be denied as to this count and as to the dismissal without prejudice of Baldwin in his individual capacity.

## Count 5

With respect to Count 5, Plaintiff asserts that his claims against the United States of America and against the Department of Veterans Affairs (individually, the "VA"), David Shulkin, Robert A. McDonald, and Lynette Taylor (collectively, the "Veterans Affairs Defendants") should not have been dismissed with prejudice. In his Complaint, Plaintiff alleges that he was told, seemingly by the Veterans Administration, that he does not "get anything" and has "no entitlement to any medical care for [his] service connected injuries." (Doc. 1, p. 13). Based on this this vague statement, the Court construed Plaintiff's allegations against the Veterans Affairs defendants and the United States as claims for an alleged denial of medical care

---

[2] The Court fully incorporates its reasoning for dismissing Baldwin and Count 3 in its Threshold Order (Doc. 9) by reference herein.

benefits by the VA.

As outlined by the Ninth Circuit Court of Appeals in *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012), (1) the Veterans Court has "*exclusive* jurisdiction" to review decisions of the Board of Veterans' Appeals, which extends to "*all* questions involving benefits under laws administered by the VA. This would include factual, legal, and constitutional questions," (2) "decisions of the Veterans Court are reviewed exclusively by the [Court of Appeals for the] Federal Circuit, which 'shall decide all relevant questions of law, including interpreting constitutional and statutory provisions,'" and (3) Congress expanded judicial review of the VA in 38 U.S.C. § 511, which states the VA "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." *Id.* at 1021-1022.

Further, the Seventh Circuit noted in *Karmatzis v. Hamilton*, 553 F. App'x 617, 618-619 (7th Cir. 2014) that "[t]he VJRA establishes the exclusive review procedure through which veterans may challenge the VA's adjudication of their benefits claims. *See* 38 U.S.C. § 511(a). The circuits unanimously agree that the VJRA divests the federal courts of jurisdiction to review lawsuits challenging individual veteran's benefits decisions. *See id.*; *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1025 (9th Cir. 2012); *Price v. United States*, 228 F.3d 420, 421 (D.C. Cir. 2000); *Beamon v. Brown*, 125 F.3d 965, 970–71 (6th Cir. 1997); *Weaver v. United States*, 98 F.3d 518, 519–20 (10th Cir.1996); *Hall v. U.S. Dep't of Veterans' Affairs*, 85 F.3d 532, 534 (11th Cir. 1996); *Zuspann v. Brown*, 60 F.3d 1156, 1158–59 (5th Cir. 1995); *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994); *Hicks v. Veterans Admin.*, 961 F.2d 1367, 1369–70 (8th Cir. 1992). A veteran may not circumvent these jurisdictional limitations by cloaking a benefits claim in constitutional terms. *See Veterans for Common Sense*, 678 F.3d at 1023 (collecting cases)."

In Plaintiff's motions to reconsider, he attempts to frame the alleged failure to provide him with adequate medical care as a constitutional violation on the part of the Veterans Affairs defendants, "but federal courts do not acquire jurisdiction to hear challenges to benefits rulings merely because those challenges are couched in constitutional terms. He is complaining about the discontinuation of his benefits, and the VJRA divests courts of jurisdiction over such claims." *Karmatzis*, 553 F. App'x at 619 (citing 38 U.S.C. § 511).

For the foregoing reasons, Plaintiff's motions to reconsider will be denied to the extent they seek for this Court to revive Plaintiff's claims against the Veterans Affairs defendants and the United States (particularly Count 5). However, because Plaintiff may still have the opportunity to bring a challenge for the denial of his benefits pursuant to the procedures outlined by the VJRA, his motions to reconsider shall be granted to the extent they request for the dismissal of Count 5 to be *without* prejudice to his bringing this and related claims against the Veterans Affairs defendants or the United States through the appropriate channels.

## New Allegations

A "motion to reconsider" is not the proper vehicle for raising additional claims. Therefore, Plaintiff must file an amended complaint if he wants allegations outside the scope of his Complaint to be considered. The motions will be denied as to all such claims.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated above, the "Objection and Motion for Reconsideration" (Doc. 12) and "Motion for Relief from Judgement or Order" (Doc. 15) are **GRANTED** in part, in that Plaintiff's claims against and related to the Department of Veterans Affairs, David Shulkin, Robert A. McDonald, Lynette Taylor, and the United States of

America, including Count 5, will be considered dismissed *without* prejudice to Plaintiff's raising such claims with the appropriate authority as outlined by the VJRA.

**IT IS FURTHER ORDERED** that Plaintiff's "Objection and Motion for Reconsideration" (Doc. 12) and "Motion for Relief from Judgement or Order" (Doc. 15) are otherwise hereby **DENIED** on all other grounds, as Plaintiff has identified no other manifest error of law, has presented no new evidence, and has tendered no other ground upon which Rule 59(e) or Rule 60(b) relief could be granted.

**IT IS SO ORDERED.**

**DATED: August 14, 2017**

**s/STACI M. YANDLE**
**District Judge**